1

GOVERNMENT OF THE DISTRICT OF COLUMBIA
DEPARTMENT OF PUBLIC SCHOOLS
OFFICE OF STUDENT HEARINGS

In the Matter of



Washington, D.C.

Friday, September 15, 2005

The above-entitled matter came on
for hearing, pursuant to notice.

BEFORE:

HERBERT ST. CLAIR, Hearing Officer

APPEARANCES:

On Behalf of the Student/Parent:

PAUL DALTON, ESQ.

On Behalf of D.C. Public Schools:

QUINNE HARRIS LINDSEY, ESQ.

This transcript was produced from
an audio CD provided by D.C. Public Schools.

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433       WASHINGTON, D.C. 20005-3701       www.nealrgross.com

I-N-D-E-X

| WITNESS | DIRECT | CROSS | REDIRECT |
|---|---|---|---|
| RODERICK MORRIS | 66 | -- | -- |
| EBONY SMITH | 78 | 86 | 98 |
| ANGELIC MOORE | 103 | 104 | -- |
| RHONDALYN MOLETT | 106 | -- | -- |

| ITEM | PAGE |
|---|---|
| Opening statement by Mr. Hull | -- |
| Opening statement by Mr. Dalton | -- |
| Closing argument by Mr. Dalton | 108 |
| Closing argument by Mr. Hull | 111 |

1            P-R-O-C-E-E-D-I-N-G-S

2                              (3:03 p.m.)

3            HEARING OFFICER ST. CLAIR:   Good

4    afternoon.   Today is Thursday, the 15th of

5    September, 2005.  It's a little after 3:00 in

6    the  afternoon.   This  is  a  confidential

7    administrative hearing concerning the special

8    education services being provided to L██████,

9    S█████ by the District of Columbia Public

10   Schools and Friendship Edison Public Charter

11   School-Chamberlain Campus, its own LEA.

12            L██████ was born on February 29th,

13   1996.  This hearing is authorized by Public

14   Law 108-446 which is the Improvement Act of

15   2004 and Title 5 of the District of Columbia

16   Municipal Regulations.    This  hearing  is

17   conducted under the auspices of the District

18   of  Columbia  Public  Schools,  herein  after

19   referred to as DCPS.  We are in Hearing Room

20   1.

21            This  hearing  is  closed  to  the

22   public unless you, Ms. Smith, expressly speak

1 | that it should be an open hearing, a public
2 | hearing. This hearing is being recorded and
3 | either party may request a copy of the
4 | recording or a transcript by making a written
5 | request or both either to the Student Hearing
6 | Office, DCPS.

7 | My name is Herbert St. Clair. I'm
8 | the hearing officer. I'm going to ask
9 | everyone here to please state his or her
10 | name. Let's begin with the attorney advisor.

11 | MR. LINDSEY: Quinne Harris
12 | Lindsey, attorney adviser on behalf of D.C.
13 | Public Schools as the State Education
14 | (inaudible).

15 | MR. MORRIS: Roderick Morris,
16 | Special Education Coordinator, Friendship
17 | Public Charter School-Chamberlain Campus.

18 | MS. MOORE: Angelic Moore,
19 | Teacher, Friendship Edison Public Charter
20 | School.

21 | DR. MOLETT: Rhondalyn Molett,
22 | (phonetic-global) Clinical Psychologist at

1  Friendship Public Charter School.

2              MR. DALTON:  Paul Dalton, Counsel

3  for Friendship Edison Public Charter School.

4              MR. HULL:  Miguel Hull, Attorney

5  from the Law Offices of James Brown and

6  Associates on behalf of the parent and the

7  student.

8              MS. SMITH:  Ebony Smith, mother of

9  L███████ S██████.

10             MR. FERNANDEZ:  Juan Fernandez,

11 Brown and Associates.

12             HEARING OFFICER ST. CLAIR:  All

13 right.  Now, disclosure -- one from you, Mr.

14 Dalton, I'm going to put that to the side.

15 I've got a motion to strike that.  All right.

16  I got a disclosure from DCPS dated September

17 7th.  Mr. Dalton, I have one here I just

18 noted that's September 8th, and from the

19 parent -- is there one from the parent, Mr.

20 Dalton?

21             MR. DALTON:  Yes, there is.  It

22 was late, but I consented to the lateness of

1    the 5-day disclosure because Mr. Hull --

2              HEARING OFFICER ST. CLAIR:   I just

3    want to make sure I have it.

4              MR.   DALTON:    -- did  not  receive

5    notice  from  the  Student  Hearing  Office

6    timely,  and  therefore  I  extended  the  time

7    period.

8              MR.  HULL:   We  actually  found  out

9    through your disclosure, Mr. Dalton.

10             MR. DALTON:   That happens all the

11   time.

12             HEARING  OFFICER  ST.  CLAIR:   Did

13   you bring a copy for me?

14             MR. DALTON:   No, but it's small so

15   we can make a copy and give you that.

16             HEARING  OFFICER  ST.  CLAIR:   All

17   right.   The counsel for the parent is going

18   to supplement the record with the copy of the

19   parents'  disclosure.    Are   there   any

20   preliminary matters?

21             MS.   HASHINGER:    Part  of  the

22   complaint alleges the DCPS and as the LEA has

1    called to the responsibility in the case and

2    DCPS does not dispute that.  However, under

3    the statutory code of charter schools where

4    LEA has the responsibility to insure Part B

5    of the act until the LEA has appealed to the

6    SEA that they are unable or unwilling to

7    service the student, the SEA only has

8    oversight; we do not have implementation

9    authority.  So as the LEA, DCPS would ask

10    that the complaint as it is alleged is DCPS

11    is dismissed from this action.

12                HEARING OFFICER ST. CLAIR:  All

13    right.  Mr. Hull?

14                MR.  HULL:    Actually if  my

15    assumption is correct, counsel's referring to

16    the    District   of   Columbia   Municipal

17    Regulation?

18                HEARING OFFICER ST. CLAIR:  Could

19    you help us?

20                MS.  HASHINGER:   No,  actually I'm

21    referring to the Charter School.

22                MR. HULL:  What statute number?

1      MS. HASHINGER:   CDCR53019 that

2   speaks to Charter Schools and the policy

3   under which the Charter maintains

4   responsibility until it's concluded that they

5   cannot serve that student, and it states that

6   if following the appeal or notification, DCPS

7   as the SEA agrees that charter school cannot

8   service the child in question, we at DCPS

9   assumes responsibility.

10      MR. HULL:   That statute and the

11   regulations are both from the statute

12   actually have to deal with internal

13   communications and responsibilities between

14   the Charter School and the SEA, not between

15   the parent and either of these entities.

16   There's numerous cases and the regulations

17   are clear, as well as the statutes interpret

18   and in cases interpreting them.

19      I'll call your attention to

20   paragraph 16 of our complaint which lists

21   those out.  We have cases in many different

22   circuits in the United States, some of them

1    may (inaudible) on conservative, and they all

2    fall on the same side saying that the SEA is

3    ultimately responsible and they put no

4    requirement on the parent or on the Charter

5    School to provide any notice to the SEA.

6              In fact, some of these cases the

7    SEA had -- in the facts in some of these

8    cases, the SEA hadn't even been involved in

9    the case at the onset and was brought into it

10   later, not having an opportunity to have

11   participated, and they were still found to be

12   ultimately liable.

13             HEARING OFFICER ST. CLAIR:    All

14   right.  What is Ms. Smith looking for?  What

15   is she asking for?

16             MR. HULL:   Independent evaluation.

17             HEARING OFFICER ST. CLAIR:    Okay.

18    If I ordered that, I think I'm going to have

19   to order Friendship to pay for it, not DCPS,

20   so I'm trying to figure out why I should keep

21   DCPS into it.  Help me out.

22             MR.  HULL:   Well, they're jointly

1   and federally liable is what I would say, but

2   they --

3           HEARING OFFICER ST. CLAIR:   Yes.

4   I mean, I'm not questioning that thinking,

5   but I think what you'd have to do is to get

6   them to default.   See, I couldn't issue an

7   order jointly and separately which means that

8   you could go to DCPS and get it funded.   What

9   I have, I think --

10          MR. HULL:   Well, it's --

11          HEARING OFFICER ST. CLAIR:   Just a

12  minute.   Ultimately responsible means that

13  they have to fall down on my order.   Then you

14  get --

15          MR. HULL:   So if you order them to

16  do it, say we prevail, you order them to do

17  it, they don't do it, I want to file a

18  hearing request to enforce that order.   Do I

19  have a standing to name DCPS?

20          HEARING OFFICER ST. CLAIR:   That's

21  what I would do, yes.

22          MR. HULL:   I would like that to be

1   clarified in your order then, if it comes to

2   that.

3           HEARING OFFICER ST. CLAIR:  Well,

4   I think that's clear in the statute.  Then

5   you could get ultimately received.

6           MR.  HULL:  Well, I'll defer to

7   your judgement on that.

8           HEARING OFFICER ST. CLAIR:  Okay.

9    Mr. Dalton?

10          MR.  DALTON:  I have no objection

11   to DCPS being dismissed.

12          HEARING OFFICER ST. CLAIR:  All

13   right.  I'm going to sever DCPS.  You can

14   leave, Ms. Hashinger.

15          MS. HASHINGER:  If it's all right,

16   as the SE I still would like to observe this

17   process.

18          HEARING OFFICER ST. CLAIR:  I have

19   no objection unless there's a confidentiality

20    question.

21          MR. DALTON:  Here I would object.

22   Now that they've asked to be dismissed they

1    should leave.

2              MS. HASHINGER:   Actually there is

3    no confidentiality.

4              MR. HULL:   There is no -- for SEA.

5              MS. HASHINGER:   We simply said --

6    we acknowledged ultimate responsibility, but

7    the action as it's been brought doesn't

8    implicate DCPS.

9              MR. DALTON:   They can't have it

10   both ways.  Either they're in or they're out.

11             MR. HULL:   For the purpose of

12   confidentiality --

13             HEARING OFFICER ST. CLAIR:   Just a

14   minute.  You want to be as an observer?

15             MS. HASHINGER:   Yes.  As the SEA

16   we do have the right to --

17             HEARING OFFICER ST. CLAIR:   Would

18   just an observer have to have permission of

19   the parties?

20             MS. HASHINGER:   No.  No.  Because

21   as an observer, I am observing, I'm still the

22   SEA and we have not denied ultimate

1    responsibility.    I   think   that   Mr.   Hull's

2    argument      that      we      have      ultimate

3    responsibility, we didn't deny that.  I said

4    in  the  facts  as  alleged  in  this  case, he

5    can't come after us for what he's asking for.

6     He's not asking for private placement, he's

7    not  saying  that  Friendship  Edison  can't

8    service    a    student,    he's    asking    for

9    evaluation.

10            And  in  your  dialog  with  Mr.  Hull

11   you   indicated   that   if   Friendship   Edison

12   doesn't  do  it, he  can  come  back  against  us.

13   We  do  have  an  obligation  to  monitor  this

14   case.   We  don't  have  implementation, but  we

15   have  a  monitoring  obligation  and  in  this

16   instance,   and   under   the   new   law,   I'm

17   requesting  to  stay  in  for  monitoring  and  I

18   have  a  right  to  monitor.    I   mean,  that

19   obligation  is  clear.   We  have  an  obligation

20   to monitor.

21            MR.  HULL:   They  don't  have  a  right

22   to  monitor  hearings, though.

1          HEARING OFFICER ST. CLAIR:  That's

2    correct.

3          MR. HULL:  They have the right to

4    monitor the educational hearings.

5          HEARING OFFICER ST. CLAIR:  Just a

6    minute.  I'm thinking that your monitoring

7    obligation has to do with the ongoing of the

8    educating    process    that    Friendship    is

9    providing to the children of the District of

10   Columbia in your supervisory capacity of the

11   SEA.  I'm thinking that it does not extend to

12   monitoring a hearing, the actual progress of

13   a hearing, where the parent objects.

14         MS. HASHINGER:  Well, I think that

15   actually counsel is attempting to have it

16   both ways, because what he's attempting to do

17   is to hold us ultimately liable by saying you

18   can't  --  although  you  don't  have  to  be

19   responsible in this particular instance, but

20   you can't be here.

21         Our    monitoring    for    special

22   education purposes goes all the way through

1    the  whole  process.    You  can't  vibrocate

2    (phonetic-global)       our        monitoring

3    responsibility.    We   have   an   ultimate

4    responsibility to --

5            HEARING  OFFICER ST. CLAIR:    Well,

6    what  supervisory capacity does  the  SEA  have

7    over this hearing?

8            MS.  HASHINGER:    It's  part  of  the

9    implementation  of  special  education  and

10   service.    There's  an  allegation  that  a

11   charter  school  within  our  boundary,  who  is

12   the  LEA,  of  whom  we  are  the  SEA  for,  has

13   failed -- and I'm sure the ultimate argument

14   is  going  to  be  has  denied  faith.    Based  on

15   what  happens  at  this  hearing,  this  Hearing

16   Officer  may  order  the  Charter  School  to  do

17   something  that  ultimately  they  may  not  be

18   able  to  do,  which  means  you're  going  to  come

19   back to us.

20            As  the  SEA  we  have  the  right  to

21   monitor  this  process.    This  is  part  of  the

22   whole   special   education   process   because

1   they're going to have to go back, Friendship

2   Edison is going to have to go back and do

3   something that's going to impact the

4   implementation of faith or of other services.

5               HEARING OFFICER ST. CLAIR:    Let me

6   ask you, let's suppose I rule against

7   Friendship Edison and you think the case

8   should be appealed and they decide not to

9   appeal it.  Can you appeal it?

10               MR. HULL:  No.

11               MS. HASHINGER:  No.

12               HEARING OFFICER ST. CLAIR:    Just a

13   minute.

14               MS. HASHINGER:    I think that's

15   unrelated to what's going on.

16               HEARING OFFICER ST. CLAIR:    Well,

17   I think I'm getting to what your capacity

18   here is, if the parent objects.

19               MS. HASHINGER:  That's like saying

20   the superintendent can't come in and sit in

21   on a case.  The superintendent is the SEA, he

22   is the SEA, the state education agency

1   officer.  He has the ultimate authority.  He

2   could  come  into  any  case  that's  going  on

3   because  ultimately  he  is  the  --  the  buck

4   stops with him.

5              As  an officer  of  the  court  and  as

6   part  of  the  office  of  general  counsel,  I  am

7   an  extension  of  the  state  education  agency

8   officer.    I  have  every  right  to  monitor

9   what's going on --

10             HEARING  OFFICER ST.  CLAIR:   Well,

11  let me ask you this.

12             MS. HASHINGER:   -- in this case.

13             HEARING  OFFICER ST.  CLAIR:   Let's

14  suppose we were in a superior court and this

15  is a sealed proceeding.

16             MS.  HASHINGER:   But  we're  not  in

17  superior  court.    It's  not  a  sealed

18  proceeding.

19             HEARING  OFFICER  ST.  CLAIR:    I

20  understand that.  I understand that.  I said,

21  "Let's suppose," and an appellate judge wants

22  to  come  in.   Can  he  come  in  and  observe  a

1 | sealed proceeding in a superior court?

2 | MS. HASHINGER: I do not know

3 | because an appellate judge is making

4 | decisions and can ultimately make a decision

5 | in the case. I am not making decisions in

6 | this case. We may be, at some point, brought

7 | into this case appropriately.

8 | HEARING OFFICER ST. CLAIR: Okay.

9 | Let me ask you this.

10 | MS. HASHINGER: He's saying

11 | appropriately.

12 | HEARING OFFICER ST. CLAIR: Let me

13 | ask you this: Can you get access to the tape

14 | without the permission of Friendship Edison

15 | or Ms. Smith?

16 | MS. HASHINGER: Yes, we can,

17 | because we were named in this party. We

18 | asked to be included.

19 | HEARING OFFICER ST. CLAIR: Yes,

20 | but I -- that's correct.

21 | MS. HASHINGER: It doesn't matter.

22 | We were dismissed, which means we are

1   entitled to the record.

2   HEARING OFFICER ST. CLAIR:   That's

3   correct up until I dismiss you.

4   MS.  HASHINGER:   No.   We  are

5   entitled to the record in this case.

6   HEARING  OFFICER  ST.  CLAIR:   No.

7   No.

8   MS.  HASHINGER:   And  do  you  know

9   why we're entitled?

10   HEARING OFFICER ST. CLAIR:  Why?

11   MS.  HASHINGER:   Because  several

12   cases preceding this -- not necessarily this

13   Hearing  Officer  --  DCPS  has  been  dismissed

14   from the case, the HOD comes to us also, and

15   guess what we find?  DCPS has been ordered to

16   do  things,  so  we  have  every  right  to  be  a

17   part of this case.

18   HEARING  OFFICER  ST.  CLAIR:   No,

19   no, no, no.

20   MS. HASHINGER:  Yes we do.

21   HEARING OFFICER ST. CLAIR:  Okay.

22   No.   What  I  think  you  should've  done  then

1   was say that they had no jurisdiction over

2   you because you were dismissed.

3           MS. HASHINGER:   That's fine.   We

4   can do that, but what I'm saying is that we

5   are entitled to the entire tape, not just the

6   part where we were dismissed.   You can't

7   vibrocate   (ph-global)   --   HOD's    not

8   vibrocated.   It's brought to us and so we

9   have --

10          HEARING OFFICER ST. CLAIR:   All

11  right.  Let me -- all right.

12          MS. HASHINGER:   So I renew my

13  response, my motion, and ask the Hearing

14  Officer to simply permit DCPS to, as the SEA,

15  to observe.   Yes, we are dismissed from

16  liability as extended right now, but by

17  extension we can be brought back in.

18          HEARING OFFICER ST. CLAIR:   All

19  right.  Let me just say this:  Mr. Hull, can

20  the representative of the SEA remain?

21          MR. HULL:   No.   Not unless they're

22  going to be a party to the case.

1             HEARING OFFICER ST. CLAIR: Yes, I

2 agree with him. I'm going to ask you to

3 leave unless you decide you want to remain a

4 party.

5             MS. HASHINGER: No, I'm not going

6 to remain a party, but I would like my

7 objection noted for the record --

8             HEARING OFFICER ST. CLAIR: Oh, of

9 course. Of course.

10             MR. HULL: And no longer a party

11 there's no --

12             HEARING OFFICER ST. CLAIR: Just a

13 minute. Just a minute, Mr. Hull. I'm going

14 to out it in the HOD and I'm going to

15 preserve the area of error for you so you can

16 take it to court.

17             MS. HASHINGER: And I'm going to

18 note for the record, if this case comes back

19 and DCPS is brought in again, I will note,

20 putting everybody on notice, that DCPS is

21 going to strenuously object because if a

22 ruling comes out of this case that makes us

1    ultimately liable, than counsel -- parent

2    through counsel has waived their right to

3    bring us in.

4        MR. HULL:  No, we haven't.

5        MS.  HASHINGER:   Because  we've

6    requested to stay in.

7        MR.  HULL:   We've  opposed  their

8    dismissal.

9        HEARING OFFICER ST. CLAIR:  Wait.

10    Just a minute.

11        MS. HASHINGER:  This is my motion.

12        HEARING OFFICER ST. CLAIR:  Just a

13    minute.   Listen.   Look,  we've  got  three

14    lawyers here.  I want lawyers not to speak

15    unless I speak to you.  I don't want any

16    (inaudible) contributions.  If I want your

17    opinion I ask for it, and if I don't ask for

18    it, keep your thoughts to yourself.  Does

19    everyone understand that?

20        MR. HULL:  Yes.

21        MR. DALTON:  Yes, sir.

22        HEARING OFFICER ST. CLAIR:   All

1    right.   Have you finished your record, Ms.

2    Hashinger (ph)?

3                MS. HASHINGER:   I did, but since

4    Mr. Hull was talking over me, I would like

5    the record to accurately reflect what I said

6    so when the court reporter takes it down, she

7    won't say "inaudible."

8                HEARING  OFFICER  ST.  CLAIR:   I

9    understand.  Please make your record as clear

10   as possible.

11               MS. HASHINGER:   DCPS as the SEA is

12   making the objection and noting that should

13   this case come back based on an order that is

14   issued by this Hearing Officer that our

15   position is that parents of counsel is

16   waiving any right to come back against the

17   SEA because we've made our request to remain

18   in to monitor in our authority as a state

19   education authority and our right to oversee

20   these matters from implementation of special

21   education services through the due process,

22   because  I  don't  believe  they  can  be

1    vibrocated.

2          And so if the position is to keep

3    us out or to make us stay in to accept my

4    ability for cases for something we don't have

5    any authority to do, you can't have it both

6    ways.  You can't say, "You can't be a part,"

7    and then come back against us.  I just want

8    to make that clear for the record so the

9    Hearing Officer understands exactly what DCPS

10   is going to appeal from the record right now.

11          HEARING OFFICER ST. CLAIR:    All

12   right.  Is that the end of it?

13          MS. HASHINGER:  That is.

14          MR. HULL:  May I make a --

15          HEARING OFFICER ST. CLAIR:  No.

16          MR. HULL:  -- statement for the

17   record?

18          HEARING OFFICER ST. CLAIR:    No.

19   No.  I'm going to move on to the next

20   preliminary matter.  I made my ruling on

21   this.  Thank you.  We are waiting for the

22   attorney advisor to depart our company.

1          MS. HASHINGER:    Let me not hold

2    you-all up.   (Inaudible)  I gave the site for

3    (Inaudible.)

4          HEARING OFFICER ST. CLAIR:    All

5    right.   I'll add this to the DCPS disclosure

6    number 1.

7               (Off-the-record comments.)

8          HEARING OFFICER ST. CLAIR:    All

9    right.   Now before I go any further, I think

10   I should go through the preliminaries.    Mr.

11   Hull, does Ms. Smith waive the review of her

12   rights?

13          MR. HULL:    Yes.   The parent's very

14   concerned that the way, the tone, of this

15   hearing so far and therefore she would ask

16   that her rights be read to her, with all due

17   respect and apologies for taking up time, I

18   think it's important.

19          HEARING OFFICER ST. CLAIR:    No,

20   no, no.   Let me see.   I'm going to read them

21   as they appear --

22          MR. HULL:   Your indulgence.   The

1    visitor I warned everyone about is here, has

2    come in.

3            HEARING OFFICER ST. CLAIR:  That's

4    all right.  This is 507 --

5            (Pause)

6            MR. HULL:  Mr. St. Clair, with all

7    due respect, Mr. Dalton is obviously going to

8    confer with DCPS counsel.    I  find  that

9    disingenuous  and  practically  unethical  that

10   he would do that when the DCPS counsel has

11   just been dismissed from this party.  I don't

12   understand what's going on.

13           HEARING OFFICER ST. CLAIR:  Well,

14   what he said was he was going to take a --

15           MR.   HULL:    May  I  excuse   Mr.

16   Fernandez to (inaudible) him?

17           HEARING OFFICER ST. CLAIR:   No.

18   Well, what I want to do is just go through

19   your parent's rights.  You asked me to read

20   the rights; I'm going to do that.  Mr. Dalton

21   said that he was going to take a wrestle (ph-

22   global) break.  I'm going to accept that and

1  I want you to.

2  MR. HULL:  Can Mr. Fernandez take

3  wrestling right?

4  HEARING OFFICER ST. CLAIR:  No.

5  No.

6  MR. HULL:  Okay.

7  HEARING OFFICER ST. CLAIR:  Okay.

8  I'm just going to go through this list that

9  was prepared -- let me see.  The rights, one

10  of the rights that you must be aware of what

11  I'm getting ready to read to you.

12  MS. SMITH:  Okay.

13  HEARING OFFICER ST. CLAIR:  And

14  these are the rights that a parent has during

15  the course of a due process hearing.  Now,

16  were you informed of your rights, due process

17  rights, either by mail or hand delivered?

18  MS. SMITH:  Yes.  Yes.

19  HEARING OFFICER ST. CLAIR:  All

20  right.  You've already answered this

21  question:  Do you want me to review your

22  rights at this time?  So that's what we're

1  doing now.

2          MS. SMITH:  Right.

3          HEARING OFFICER ST. CLAIR:   Were

4  you  notified  of  any  proposed  action  by

5  Friendship Edison by certified mail?   That

6  is, that they weren't going to do anything or

7  they weren't going to evaluate the child, or

8  the child did not merit evaluation.   Did you

9  get anything like that by certified mail?

10          MS. SMITH:  Through my attorney.

11          HEARING OFFICER ST. CLAIR:   All

12  right.  Are you aware that you're entitled to

13  a written decision from the student hearing

14  office with 45 days of your -- well, this is

15  the new law, so I think it's what?   Forty-

16  five days after the request for mediation

17  hearing is filed after the failure of the --

18          MR.  HULL:   Forty-five after the

19  thirtieth.

20          HEARING OFFICER ST. CLAIR:  Right.

21   Right.  You know you're entitled to have an

22  attorney here, right?

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C. 20005-3701          www.nealrgross.com

1    MS. SMITH:  Yes.

2    HEARING  OFFICER  ST.  CLAIR:    Did

3    you  know  that  you  could  bring  any  witnesses

4    you may have here?

5    MS. SMITH:  No.

6    HEARING  OFFICER  ST.  CLAIR:    Did

7    you  know  that  you  could  request  the  presence

8    here  of  anyone  at  Friendship  Edison  with

9    specific  knowledge  about  this  case?

10    MS. SMITH:  I knew that.

11    HEARING  OFFICER  ST.  CLAIR:    Okay.

12    Did  you  know  that  your  attorney  or  you  could

13    ask  questions  of  anyone  in  the  fashion  of

14    cross  examination  if  they  made  a  direct

15    statement?

16    MS. SMITH:  Yes.

17    HEARING  OFFICER  ST.  CLAIR:    All

18    right.    Were  you  notified  that  you  could

19    examine  the  records  that  Friendship  Edison

20    Public  Charter  School  maintains  on  your  child

21    prior  to  this  hearing?

22    MS. SMITH:  Yes.

1        HEARING OFFICER ST. CLAIR:   Were
2   you informed that you were entitled to an
3   independent evaluation by a private evaluator
4   if you disagreed with any evaluation that
5   Friendship Edison Public Charter School
6   completed?

7        MS. SMITH:   Yes.

8        HEARING OFFICER ST. CLAIR:   This
9   is a repugnant question.  I have to ask this:
10   You are able to read and write, Ms. Smith?

11        MS. SMITH:   Yes.

12        HEARING OFFICER ST. CLAIR:   Okay.
13   I've got to make sure that -- they sent a
14   notice to you and you --

15        MS. SMITH:   Right.  That's fine.

16        HEARING OFFICER ST. CLAIR:   That's
17   a repugnant question, but I've got to ask it.
18   All right.  Were you notified that you had
19   to disclose whatever evidence that you wanted
20   to produce at this hearing at least five days
21   before the hearing?

22        MS. SMITH:   Yes.

1        HEARING OFFICER ST. CLAIR:  Did

2    you know that Friendship Edison had to do the

3    same thing -- disclose whatever information

4    they had within five days?

5        MS. SMITH:  Yes.

6        HEARING OFFICER ST. CLAIR:  Well,

7    you knew that all of the documents that were

8    supposed to be cross revealed?

9        MS. SMITH:  Yes.

10        HEARING OFFICER ST. CLAIR:  All

11    right.  Now, do you have any questions about

12    anything I just said?

13        MS. SMITH:  No, I do not.

14        HEARING OFFICER ST. CLAIR:  Okay.

15    Mr. Hull, do you have any?

16        MR. HULL:  I have a motion that I

17    submitted in writing before and made you a

18    copy.  Mr. Dalton, did you get a copy?

19        MR. DALTON:  Yes, I did.

20        HEARING OFFICER ST. CLAIR:  I'm

21    trying to get to that report.

22        MR. HULL:  There were two

1    versions.    The  second  one  said,  "Corrected

2    motion.   Disregard previous motion."

3                  HEARING  OFFICER  ST.  CLAIR:    Okay.

4    First,  let  me  get  the  motion  here.   I  think

5    I  have  it.   No,  that's  the  disclosure.   It's

6    the corrected motion?

7                  MR.  HULL:   Yes.

8                  HEARING  OFFICER  ST.  CLAIR:   Do  you

9    have this, sir?

10                 MR.  DALTON:   I  don't  know  about  a

11   corrected motion.

12                 MR.  HULL:   Faxed  about  20  minutes

13   after  the  original.   I  have  fax  confirmations

14   for these.

15                 HEARING  OFFICER  ST.  CLAIR:    Oh.

16   You corrected immediately?

17                 MR.  HULL:   Yes.

18                 MR.  DALTON:   I  thought  it  was  --

19                 HEARING  OFFICER  ST.  CLAIR:   I'll

20   tell you what.  Did you get it?

21                 MR.  DALTON:   Sir,  I'm  trying  to

22   answer you.

1               HEARING OFFICER ST. CLAIR:  Okay.

2               MR. DALTON:  I made an incorrect

3    assumption, because it was faxed 20 minutes

4    later, and because I have often gotten

5    duplicate copies of things faxed from this

6    law firm, I made the assumption that it was a

7    duplicate.  That was an error on my part.  I

8    would like a couple of minutes for Mr. Hull

9    to tell me the difference between the

10   corrected and the original.

11              HEARING OFFICER ST. CLAIR:  That's

12   what I was going to ask him to do.

13              MR. HULL:  Typographical errors

14   pertaining to where, in the corrected version

15   I put "FEPCS" referring to Friendship Edison

16    Public -- it's just typographical.

17              MR. DALTON:  Okay.

18              MR. HULL:  I put "DCPS" and I

19   intended to put "FEPCS."

20              HEARING OFFICER ST. CLAIR:  Okay.

21              MR. HULL:  Now, one other

22   preliminary matter before we get started

1  because it would affect the entire process.

2            HEARING OFFICER ST. CLAIR:  Okay.

3            MR. HULL:  I just want to confirm

4  that you were not the Hearing Officer in the

5  ██████ H██████ (phonetic) case.  This is a

6  federal district case overruling the Hearing

7  Officer on a point that will be in contention

8  at this hearing.

9            HEARING OFFICER ST. CLAIR:  Let me

10  see that.

11            MR. HULL:  It doesn't cite who the

12  Hearing Officer was, and therefore I just

13  want to make sure --

14            HEARING OFFICER ST. CLAIR:  Wait a

15  minute.

16            MR. HULL:  -- that you weren't the

17  Hearing Officer.

18            HEARING OFFICER ST. CLAIR:  Let me

19  just read this.

20            (Pause)

21            HEARING OFFICER ST. CLAIR:  All

22  right.  Now where did the Hearing Officer

1  misinterpret the --

2              MR. HULL:  What the court said --

3  I can show you the particular paragraph, sir.

4              HEARING  OFFICER  ST.  CLAIR:    It

5  shows  that  he's  complaining  about  the  delay

6  being unreasonable.

7              MR. HULL:  No, sir.  The issue is

8  going to be statutory interpretation.

9              HEARING  OFFICER  ST.  CLAIR:    Okay.

10   Okay.

11             MR.  HULL:   Where  the  Congress  has

12  said  one  thing  about  evaluations  and  then

13  another  point  in  the  other,  the  Hearing

14  Officer  extended  that  interpretation,  they

15  found  that  that  was  incorrect  and  overturned

16  and  this  is  exactly  the  argument  that  this

17  counsel  will  be  making  to  you  today,  and  it

18  is  exactly  the  argument  you  did  not  buy  -- my

19  understand  was  -- this  morning  in  a  similar

20  case.    And  I  don't  know  why  I'm  having

21  trouble  locating  the  court's  discussion

22  because  it's  highlighted  and  all  the

1    highlights -- as you probably know, I just

2    received this case three minutes before.  But

3    do you recall, sir, whether or not you were

4    the Hearing Officer?

5              HEARING  OFFICER  ST.  CLAIR:    In

6    that case?

7              MR. HULL:  Yes.

8              HEARING  OFFICER  ST.  CLAIR:    I

9    don't think so.

10              MR.  HULL:    Would  it  be  out  of

11    order  to  request  the  student  hearing office

12    to confirm who the Hearing Officer was?

13              HEARING OFFICER ST. CLAIR:  No.  I

14    don't know if --

15              MR.  HULL:    I  don't  know  if  they

16    can do that, but --

17              HEARING OFFICER ST. CLAIR:  That's

18    right.

19              MR.  HULL:    Would you mind calling

20    them while I review this so I can find that

21    cite for you in here?

22              HEARING OFFICER ST. CLAIR:    Let's

1   suppose  I  was  the  Hearing  Officer.    Then

2   what's the --

3                    MR.    HULL:      Then    I    would

4   respectfully request that you refuse yourself

5    from this hearing.

6                    HEARING  OFFICER  ST.  CLAIR:    On

7   what basis?

8                    MR. HULL:  On the basis, sir, that

9   the  court  reversed  your  opinion  of  the

10  statutory  interpretation  and  that  you  have

11  subsequently,  after  the  court  has  reversed

12  you,  made  a  decision  that  it  is  again  in

13  violation of the court's judgement.

14                    HEARING OFFICER ST. CLAIR:  I see

15  it now.  Get the provision that you want me

16  to read because this was not interpreting the

17  Improvement Act of 2004, was it?

18                    MR. HULL:  No.

19                    MR.  DALTON:    No,  it  wasn't,  sir,

20  but  it  was  a  question  of  statutory

21  interpretation.

22                    HEARING  OFFICER  ST.  CLAIR:    All

1    right.    Fine.    I'll see it.    I see it.    Put

2    your hand down.    I know that I haven't even

3    given you a chance to make your motion yet.

4    As a matter of fact, this is in reply --

5                    MR. HULL:    No, it's not you, sir,

6    because it says it was not tainted by "her"

7    reliance, so we know it wasn't you.

8                    HEARING OFFICER ST. CLAIR:    We

9    pretty much know who it is now, right?

10                   MR. HULL:    Yes, we pretty much who

11   it is now unless they have the wrong pronoun.

12                   HEARING OFFICER ST. CLAIR:    All

13   right.    I'm going to step out for 30 seconds.

14                           (Whereupon, a short break

15                           was taken.)

16                   MR. HULL:    Oh, here it is.    It

17   wasn't highlighted.

18                   HEARING OFFICER ST. CLAIR:    Okay.

19    Where is your motion, Mr. Hull?

20                   MR.    HULL:    The    motion    is    to

21   exclude    all    testimony    and    documents    and

22   portions of documents relating to settlement

1    discussion from being admitted to the record.

2                    HEARING    OFFICER    ST.    CLAIR:

3    Settlement discussions as of when?

4                    MR.    HULL:        All    settlement

5    discussions since the filing of the hearing

6    complaint, and not just limited to what may

7    have happened at a resolution or documents

8    relating to settlement offers.  As under the

9    federal rules of evidence they are to be

10   excluded from being admitted as a policy

11   measure to promote settlement and free flow

12   of negotiations, the drafters of the federal

13   rules decided that these should not be

14   admitted because in some instances they can

15   represent prima facie evidence of viability

16   and in other instances they can also present

17   other prejudices that would also harm the

18   parties and inappropriately influence the

19   triers of facts.

20                    Now specifically what we would

21   like to exclude would be all testimony of all

22   settlement discussions that Friendship Edison

1    Public Charter School or its agents may have

2    had with the parent or her agents.

3               We    also    wish    to    exclude,

4    specifically call your attention to Exhibit

5    Edison Number 1, which was the Answer filed

6    pursuant to the IDEIA, we'd like to strike

7    paragraph 19, 20, 21, 22, 23, and 24 as these

8    are settlement offers that should not be

9    admitted pursuant to the federal rules of

10   evidence and the case law that I've cited in

11   a written motion.

12              HEARING OFFICER ST. CLAIR:  Which

13   ones were they?  The numbers?

14              MR. HULL:  19, 20, 21, 22, 23, and

15   24.

16              HEARING OFFICER ST. CLAIR:  It's

17   19 through 24.

18              MR. HULL:  Correct.  And then we'd

19   like to exclude document Exhibit Number 2 in

20   its entirety and Exhibit Number 3 in its

21   entirety and Exhibit Number 4 in their

22   entirety as these were all --

1    HEARING OFFICER ST. CLAIR:   When

2   did the resolution meeting take place?

3    MR. HULL:   August 2, 2005.   As

4   these are all either related to the

5   resolution meeting itself, or they were

6   settlements in offer of settlement which

7   should not be admitted because they're

8   irrelevant, do they prove that Friendship

9   Edison was liable?   Well, maybe they do,

10   maybe they don't, but secondly they're

11   prejudicial.   They taint the real issue here

12   which is whether Friendship Edison failed to

13   evaluate the student in a timely manner, so I

14   would rely on the written motion and ask that

15   you prevent Friendship Edison or its agents

16   from providing testimony relating to these

17   documents or any settlement discussions and

18   exclude the portions of the document, or the

19   documents that I just referred to.

20    HEARING OFFICER ST. CLAIR:   All

21   right.  Mr. Dalton?

22    MR. DALTON:   For the record, I

1  object to counsel's characterization of a

2  resolution meeting as a settlement conference

3  prior to the new law.   IEC meetings,

4  placement meetings, any type of meetings like

5  that, those notes were never excluded even if

6  there as an offer made, which I've done

7  hundreds of these and several times I would

8  make offers to settle the case in the

9  agreement, and specifically, with regard to

10  attorney fees, the court encouraged the

11  disclosure of the settlement.  And the reason

12  they do that --

13         HEARING OFFICER ST. CLAIR:  Just a

14  minute.   You mean when the issue is

15  attorney's fees?

16         MR. DALTON:  Correct.

17         HEARING OFFICER ST. CLAIR:  All

18  right.  But that's not an issue that I have

19  any jurisdiction over.

20         MR. DALTON:  Nevertheless, they're

21  both under the old law and the new law.

22  There was not a specific prohibition, but a

1  specific disclosure of those agreements.

2         HEARING OFFICER ST. CLAIR:  Where

3  does it say that?  Show me in the law where

4  it says that.

5         MR.  DALTON:    It's  under  the

6  attorney fee section that the --

7         HEARING OFFICER ST. CLAIR:  Just

8  show it to me.  Just show it to me.

9         MR. DALTON:  I didn't bring a copy

10  of the old law.

11         HEARING OFFICER ST. CLAIR:  Well,

12  I think we're under the new one.

13         MR.  HULL:   I have a copy of the

14  new one if the Hearing Officer --

15         HEARING OFFICER ST. CLAIR:  Just a

16  minute.  Just a minute.

17         MR. DALTON:  It's the same revision

18  if, Mr. Hull can cite you the provision to

19  save time.  Really.  I want to save time.

20  We're already an hour into this process and we

21  haven't even heard the evidence.

22         MR.  HULL:  Well, the provision is

1   titled "Jurisdiction of the District Courts;

2   attorney fees."   So I don't know that it's

3   even relevant.

4                 MR. DALTON:  No, no, no.

5                 HEARING  OFFICER  ST.  CLAIR:   I

6   thought you told -- all right.  Go ahead.

7                 MR.  DALTON:   Mr.  Hull,  what  I'm

8   talking about is the provision that allows me

9   to restrict or eliminate your attorney fees by

10  giving you a settlement agreement ten days

11  prior to --

12                HEARING OFFICER ST. CLAIR:  No, no,

13  no, no.

14                MR. DALTON:  It's part of the same

15  district court provision.

16                HEARING OFFICER ST. CLAIR:   Now I

17  know what you're talking about.

18                MR. DALTON:  Okay.

19                HEARING OFFICER ST. CLAIR:  Let me

20  tell you what my understanding of that is.

21  You  go  to  the  resolution  meeting,  or

22  independent of the resolution meeting, you can

1       --

2                    MR. DALTON:  Independent, yes, sir.

3                    HEARING    OFFICER    ST.    CLAIR:

4       Independent of it, you can make an offer in

5       writing ten days prior to the hearing.

6                    MR. DALTON:  Correct.

7                    HEARING OFFICER ST. CLAIR:   Then

8       you have the hearing.   That offer is  not

9       material to the meeting at that point.   The

10      Hearing Officer, without any privy to that,

11      makes  a   determination  on  the  evidence

12      presented  at   the   hearing  without   the

13      settlement agreement at that point.

14                   Then if my determination does not

15      give  the  parent  anything  more  than  you

16      offered, then you come back to me and ask me

17      to make a determination -- I'm not going to

18      forget you  -- make a determination that the

19      Hearing  Officer  --  the  award  was   not

20      substantially favorable to the client  more

21      than what that offer is.  And then when he

22      tries to go to court to get his fees, the

1    judge will look at my determination and say,

2    "Look.   This is what they offered you; you

3    don't get any fees."    That's what my

4    understanding of that is.

5                MR. HULL:  May I respond?

6                HEARING OFFICER ST. CLAIR:  Yes.

7                MR. HULL:    May I respond.    I

8    haven't been --

9                HEARING OFFICER ST. CLAIR:  I want

10   to hear this.  I haven't forgotten you because

11   he's responding to your motion.  Go ahead.

12                MR. DALTON:  And this is only the

13   first three points that I want to make with

14   regard to that, sir, that is a possible but

15   not the only way that that can go down.

16                HEARING OFFICER ST. CLAIR:   That

17   what can go down?

18                MR. DALTON:   The way that that

19   agreement is shielded from you.   That is one

20   interpretation and one method.  My preferred

21   method, sir, is to disclose the agreement.

22                HEARING OFFICER ST. CLAIR:   Yes,

1  but don't you think that would have an impact

2  on the trier of facts and that that would --

3              MR. DALTON:  No, because --

4              HEARING OFFICER ST. CLAIR:  Well,

5  let me ask you this: Why is it as a general

6  rule in any civil trial that settlement

7  negotiations are routinely excluded?

8              MR. DALTON:  Thank you for asking

9  that question because it goes to the heart of

10  why IDEIA is different than regular civil

11  matters.  In regular civil matters there is

12  not a specific endorsement under the statute

13  for settlement agreements and then a specific

14  count with regard to attorney fees if you

15  don't abide by them.  That's why IDEIA is

16  unique, okay?  I'm on the federal statutes.

17              The reason that you have the

18  prohibition about the disclosure, you want to

19  keep it secret in all other civil litigation

20  is to encourage that.  And if you didn't have

21  that you wouldn't have the encouragement.  But

22  IDEIA is completely different.  Under IDEIA

1    there  is  a  penalty  for  not  abiding  by  that

2    (inaudible).

3              HEARING OFFICER ST. CLAIR:  That's

4    correct.  And the penalty is to come in after

5    the  determination  and  to  put  the  settlement

6    offer  on  the  table  and  say,  "Look.   They

7    didn't  get  anything  better  than  what  we

8    offered them."

9              Another  thing  about  the  civil

10   litigation, once the civil litigation begins,

11   the  settlement  is  completely  immaterial

12   forever.

13             MR. DALTON:  Yes.

14             HEARING   OFFICER   ST.   CLAIR:

15   Forever.

16             MR. DALTON:  That's correct.

17             HEARING OFFICER ST. CLAIR:  But in

18   this, the settlement agreement, it may or may

19   not  be  immaterial  depending  on  what  the

20   Hearing Officer says.

21             MR. DALTON:  All the more that goes

22   to my argument and not for his.  All the more

1    it goes for my argument because under the

2    regular civil statute, it never comes up

3    because it must be held confidential.  If it

4    ever did come up, the whole confidentiality

5    would be flushed down the drain.  So that goes

6    to the proposition of what I'm talking about,

7    the Congress specifically allows for their

8    disclosure.

9              HEARING OFFICER ST. CLAIR:  Yes.

10   After the Hearing Officer makes the

11   determination.

12             MR. DALTON:  I want to move on to

13   the next point because it's clear that on the

14   record you're going to overrule me, so just

15   know my objection.

16             HEARING OFFICER ST. CLAIR:  Okay.

17             MR. DALTON:  Point two is this:

18   Under the new law, which we are under, section

19   615E -- and I will provide the Hearing Officer

20   with this summary of my lecture series on the

21   law --

22             HEARING OFFICER ST. CLAIR:  Wait.

1    I'd  rather  just  see  the  law;  not  an
2    interpretation of it.

3                 MR.  DALTON:   Okay.   Well,  let  me
4    tell  you  the  argument  and  then  you  can  see
5    whether you really want to go to it.

6                 HEARING OFFICER ST. CLAIR:  Well, I
7    have the law at home.

8                 MR. DALTON:  It's 615E300.506.

9                 HEARING OFFICER ST. CLAIR:  Wait a
10   minute.  That sounds like a regulation, not a
11   law.

12                MR. DALTON: Yes, it's both.  Both.
13   I'm  giving  you  the  statute  and  then  I'm
14   giving you the regulatory side of it.  They're
15   not in conflict but I want to give you both.

16                Now, it specifically says that with
17   regard to mediation, it specifically says --

18                HEARING OFFICER ST. CLAIR:   Oh,
19   yes, I know what you're talking about.

20                MR. DALTON:  -- it's confidential.
21   Now when you go to 615F1B, federal regulation
22   300.510,  it  is  specifically  silent  as  to

 1    confidentiality.  Now, when you combine those
 2    two interpretation with the Herban case that
 3    says when Congress has two sections that are
 4    virtually identically on the same subject, and
 5    they mention confidentiality in one and they
 6    don't in the other, you cannot reinterpret
 7    that and convert the confidentiality portion
 8    of one to the second, and that is directly on-
 9    point, sir.

10          HEARING OFFICER ST. CLAIR:  All
11    right.  Listen.  Here's the difference:  If
12    something is confidential, it's confidential
13    always, right?

14          MR. DALTON:  Yes.

15          HEARING OFFICER ST. CLAIR:  Now,
16    the settlement agreement is not confidential
17    under the hearing under the resolution,
18    because otherwise you wouldn't be able to put
19    it on the table afterwards to try to defeat
20    the parent's claim for reimbursement.

21          MR. DALTON:  Exactly.

22          HEARING OFFICER ST. CLAIR:  Yes.