1    So that's a way of looking at it and saying

2    that's why they didn't mention it under the

3    succeeding provision, the one with the due

4    process hearing, because the rule anticipates

5    that the settlement agreement may become

6    material, and that's at the option of you,

7    sir.

8            If I decide to not give Ms. Smith

9    anything more than you put on the table, then

10   that settlement agreement is not confidential

11   and you can bring it to my attention and ask

12   me to determine that the offer you made in

13   writing ten days before was not any better

14   than what I gave them, then I certify that.

15   When I certify that, if Mr. Hull wants to take

16   it to court and try to get fees, he's

17   perfectly welcome.

18            MR. DALTON:  Okay.  But I don't see

19   that it's limited to that purpose.  I agree

20   with you that that is a possible

21   interpretation.

22            HEARING OFFICER ST. CLAIR:  I think

1    that's the only one.

2            MR. DALTON:  All right.  Well then

3    I just note my objection for the record.  My

4    third point -- I had three -- my third point

5    is that the federal citation that he made

6    isn't even applicable.

7            HEARING OFFICER ST. CLAIR:  What

8    are you talking about?  The federal rules?

9            MR. DALTON:  Yes.

10           HEARING OFFICER ST. CLAIR:  I'll

11   tell you what.  I agree with you.  The first

12   rule of the federal rules of civil procedure

13   says these rules obtained in the federal

14   courts.

15           MR. DALTON:  Right.  Right.

16           HEARING OFFICER ST. CLAIR:  I know

17   you're trying to make me think I'm a judge,

18   Mr. Hull, but interestingly in the statute

19   they do mention rule 69, federal rule 68.

20   Isn't that the rule they -- no, not in the new

21   law, but they do mention the federal rule, but

22   go ahead.

1          MR.   HULL:     But   they   only

2   incorporate that one.   That isn't a license to

3   incorporate all of them.

4          HEARING   OFFICER   ST.   CLAIR:     I

5   understand.    I   just   mentioned   that.    I

6   apologize.

7          MR.   DALTON:   Okay.   So my third

8   objection  is  that  he  could  have  said  any

9   reason  in  his  motion,  any  reason.   He didn't

10  talk about points one and two.   He only talked

11  about   point   three   in   my   discussion,   so

12  therefore,  he  loses  on  his  motion  even  though

13  you may disagree with me as to points one and

14  two.    He  loses  because  he,  as  the  attorney,

15  had  to  make  the  basis  of  his  motion  something

16  in  addition  to  that  rule  where  that  doesn't

17  apply.

18          HEARING  OFFICER  ST.  CLAIR:   Well,

19  let me -- is that form over substance?

20          MR. HULL:  No, sir, it's not.

21          MR.   DALTON:    At   least   it's

22  persuasive  argument  that  you  can  consider  if

1    you feel that it's not binding on you,

2    although we disagree --

3                    HEARING OFFICER ST. CLAIR:    Yes,

4    I'll tell you, I'm basically going to strike

5    the resolution notice.    I hope you have

6    something, you know, ten-day offer to Mr.

7    Hull.

8                    MR. DALTON:    I do.    In addition, he

9    wants that to go out, too.

10                    MR. HULL:    We object to that, too.

11                    HEARING OFFICER ST. CLAIR:    Oh, no,

12    no.    Now the offer, the ten-day offer to

13    settlement, that's good but you may win, in

14    which case it becomes irrelevant.

15                    MR. HULL:    Right.

16                    HEARING OFFICER ST. CLAIR:    If you

17    lose, but not more than what you offered, than

18    you can bring it back to me as a post-hearing

19    motion and then I will decide whether or not

20    that's true, and then I'll make a

21    determination that the award that Mr. Hull won

22    was not anymore favorable than what you

1   offered, and then Mr. Hull can do with that

2   whatever he thinks is propitious.

3                Now, I think I've resolved this.

4                MR. HULL:  May I be heard?

5                HEARING OFFICER ST. CLAIR:  Just a

6   minute.  On what issue?

7                MR. HULL:  Relating to your intent

8   to have some sort of post hearing.

9                HEARING OFFICER ST. CLAIR:  No.  If

10  he files it, then I'll hear your argument,

11  because I don't want to hear -- no.

12               MR. HULL:  Please note my request

13  to be heard on that point --

14               HEARING OFFICER ST. CLAIR:  Right.

15   And I will deny it.  All right.  Fine.

16  Where's the denial?  What does Ms. Smith want?

17               MR. HULL:  She wants independent

18  evaluations and let me refer you to the

19  disclosure.  If you look at Exhibit Number 2 -

20  -

21               HEARING OFFICER ST. CLAIR:  What

22  disclosure?

1            MR. HULL:  Our disclosure, parent's

2     disclosure, Exhibit Number 2, which --

3            HEARING OFFICER ST. CLAIR:  Is that

4     the one I don't have?

5            MR. HULL:  The one you don't have.

6      This is the letter before Ms. Smith had

7     retained counsel.  She didn't retain counsel

8     until I guess close to the end of the school

9     year or beyond the end of the school year.

10           HEARING OFFICER ST. CLAIR:  That's

11    June 2005?

12           MS. SMITH:  January.

13           MR. HULL:  This is January 26,

14    2005.

15           HEARING OFFICER ST. CLAIR:  No, you

16    said she didn't retain counsel.

17           MR. HULL:  Correct.  The Exhibit

18    date is January --

19           HEARING OFFICER ST. CLAIR:  Hold

20    on.  Let me read this, because I don't have

21    time.

22           MR. HULL:  Sure.

58

1          HEARING  OFFICER  ST.  CLAIR:    Who
2    prepared this form?
3          MR.  HULL:    The  parent  did  through
4    her pediatrician.
5          MS.  SMITH:  Pediatrician.
6          HEARING  OFFICER  ST.  CLAIR:    All
7    right.  You answered the question.
8          (Pause)
9          HEARING  OFFICER  ST.  CLAIR:    All
10   right.  Go  ahead.  You're  going  to  get  me  a
11   copy of this, right?
12          MR.  HULL:    Yes,  of  course.    The
13   parent  provided  this  document  to  her  son's
14   teacher  at  Friendship  Edison  Public  Charter
15   School.    Ms.  Moore,  who's  sitting  at  this
16   table,  who  was  disclosed  and  who  we  actually
17   compelled  to  be  here  provided  it  to  her  on  or
18   about  this  date  within  five  days  or  so  of  this
19   date, January 26th.
20          Our  position  is  that  this  satisfies
21   the  requirement  that  parent  provide  written
22   request  to  the  school  notifying  them  of  the

1  need to evaluate.  The parent asked Mr. Morris

2  several times after this document was provided

3  if  she  needed  to  do  anything  else.   The

4  parent's  testimony  will  be  that  Mr.  Morris

5  said that she had forwarded it to the special

6  education coordinator and that she just needed

7  to wait for a response and she did not need to

8  do anything else.

9          The   parent   relied   on   that

10 representation  by  a  representative  of  the

11 Charter  School,  the  child's  teacher,  and

12 waited.  One hundred twenty days passed and to

13 date,  the  evaluations  have  not  been  done.

14 Therefore, she --

15          HEARING  OFFICER  ST.  CLAIR:   Has

16 anything been done?

17          MR. HULL:  No.

18          HEARING  OFFICER  ST.  CLAIR:   Any

19 letters of notice intent?

20          MR. HULL:  No.

21          HEARING  OFFICER  ST.  CLAIR:   Any

22 telephone calls to your client?

1           MR. HULL:  Not that I'm aware of.

2           HEARING  OFFICER  ST.  CLAIR:   Go

3    ahead.

4           MR.  HULL:  Offers  and  settlement

5    have been made, but we're not going to discuss

6    those here because you've already ruled.

7           HEARING OFFICER ST. CLAIR:  Wait a

8    minute.  These are only offers of settlement

9    that  post-date --

10          MR. HULL:  That the parent --

11          HEARING  OFFICER  ST.  CLAIR:   No,

12   wait a minute.  That post-date the resolution

13   conference.

14          MR. HULL:  Yes, with the exception

15   of the answer to the Exhibit Number 1, the

16   paragraph 19, 20 -- that was submitted before

17   the resolution conference.

18          HEARING OFFICER ST. CLAIR:  Oh, but

19   they were settlement talks?

20          MR. DALTON:  No.  Those paragraphs

21   are actually settlement offers and that's why

22   we asked you to exclude them from the record.

1           HEARING OFFICER ST. CLAIR:  Okay.

2    All right.  Okay.  All right.

3           MR.  DALTON:   My  paragraphs  19

4    through 24.

5           HEARING OFFICER ST. CLAIR:  All

6    right.   What I'll do is take those under

7    advisement.  I didn't rule on those, did I?

8           MR. DALTON:  I thought you ruled on

9    everything.

10           HEARING OFFICER ST. CLAIR:  No.  I

11    thought I ruled no the IEP.

12           MR.  HULL:   Yes.   Two, three, and

13    four -- not one.

14           HEARING OFFICER ST. CLAIR:  Yes.

15    Right.  I'll take that under advisement.  If

16    there are settlement talks, I'm going to

17    strike them.  Go ahead.

18           MR. DALTON:  Well, they were in the

19    sense that the hearing request had already

20    been filed so we were already in this posture,

21    so  no, there was no offer to do the

22    evaluations before the filing of the hearing

62

1    complaints.

2                    HEARING OFFICER ST. CLAIR:   All

3    right.   How many evaluations -- what was the

4    120-day total?

5                    MR. DALTON:   The 120 days would've

6    been the end of May, give or take.

7                    HEARING OFFICER ST. CLAIR:   When

8    did you file?

9                    MR. DALTON:   We filed -- your

10   indulgence, please -- July 15, 2005.

11                   HEARING OFFICER ST. CLAIR:   Okay.

12   Is that it?

13                   MR. DALTON:   Well, what is it that

14   we want?   We would want a psycho-educational

15   refer you to what we said in our hearing

16   request.   We want a finding, appropriate

17   findings in the parent's favor.   We would want

18   you to order the charges that --

19                   HEARING OFFICER ST. CLAIR:   I know

20   you'd like to read all 30 of those paragraphs,

21   but --

22                   MR. DALTON:   No.   I'm skipping to

1  the relief requested.

2                HEARING OFFICER ST. CLAIR:  Okay.

3                MR. DALTON:  Funding of independent

4  psycho-educational,   speech   and   language,

5  clinical  psychological  to  rule  out  possible

6  ADHD  or  emotional  disturbances  and  that  is

7  already  information  and  manifestations  of

8  possible  emotional  disturbance  or  ADHD  given

9  some  behavior  problems  and  attention  problems

10  that  have  been  revealed  at  that  school,  and

11  any  other  assessment  that  are  recommended  by

12  those  listed  here.    We  would  ask  that  you

13  order  the  MDP  meeting  --

14                HEARING  OFFICER  ST.  CLAIR:    All

15  right.    Your  opening  statement,  call  your

16  first  witness.

17                MR.  HULL:    I  would  like  to  respond

18  because   I   have   a   motion   for   directive

19  findings.

20                HEARING  OFFICER  ST.  CLAIR:    I'm

21  listening.

22                MR.  HULL:    First  of  all,  there  is

1    no way in the world, in my humble opinion --

2            HEARING OFFICER ST. CLAIR:  Well,

3    we  know it's not humble.  Go ahead.

4            MR. HULL:  That's why I said that,

5    just because of our long-standing record, that

6    to  exclude  my  Answer  goes  to  the  very

7    fundamental  constitutional  right  of  any

8    defendant --

9            HEARING OFFICER ST. CLAIR:  Who

10   excluded the Answer?

11           MR. HULL:  He is asking you to.

12           MR.  DALTON:      Only   certain

13   paragraphs.  I apologize.

14           HEARING OFFICER ST. CLAIR:  I did

15   not exclude anything.

16           MR. HULL:  I understand that, sir,

17   but part of my --

18           HEARING OFFICER ST. CLAIR:  And

19   just wait, wait.  He only asked that certain -

20   - I think it was so many paragraphs.

21           MR. DALTON:  Yes.  Paragraphs 19

22   through 24.

1              HEARING OFFICER ST. CLAIR:  Yes, so
2    we know they're 19 plus other paragraphs.

3              MR. HULL:  But for the purpose of a
4    directive  finding,  those  paragraphs  are
5    critical.

6              HEARING  OFFICER  ST.  CLAIR:    All
7    right.  Fine.

8              MR. HULL:  Okay?  So my first point
9    is   that   those   paragraphs   cannot   be   in
10   contemplation  of  settlement  because  counsel
11   has  told  you  that  settlement  did  not  occur
12   prior  to  the  resolution  meeting  which  was
13   subsequent  to  the  filing  of  the  answer.    And
14   also  you  said  that  you  would  listen  to
15   anything  that  was  prior,  okay?    So  therefore
16   we  respectfully  request  a  directive  finding
17   based solely on our answer.

18              Second  of  all  we  request  a
19   directive  finding  based  on  the  following
20   facts, that --

21              HEARING OFFICER ST. CLAIR:  Wait a
22   minute.  I don't have any facts.

1          MR. HULL:  Yes, you do, because --

2          HEARING OFFICER ST. CLAIR:  Where.

3          MR. HULL:  You have, in the record,

4    a  portion  of  notes  which  does  not  deal  --

5    which  does  not  deal  --  with  settlement

6    agreements that you could refer to even though

7    you've excluded the settlement portion, you

8    haven't, in my mind, you haven't excluded

9    everything --

10         HEARING OFFICER ST. CLAIR:  No, I

11   haven't.

12         MR. HULL:  -- that's not related to

13   that.  And with regard --

14         MR. DALTON:  Objection.  These were

15   notes taken at the resolution conference.

16         HEARING OFFICER ST. CLAIR:  Mr.

17   Hull, Mr. Hull.  I'm going to let him finish.

18   I  mean,  your  motion  to  strike  these

19   paragraphs, I took under advisement.

20         MR. DALTON:  But he's referring to

21   actual  notes  that  were  written  at  the

22   resolution conference.

1              HEARING OFFICER ST. CLAIR:  Just a

2    minute.  Mr. Dalton --

3              MR. DALTON:  Yes, sir.

4              HEARING OFFICER ST. CLAIR:  Are you

5    referring to notes that were written at the

6    resolution conference?

7              MR. DALTON:  With regard to issues

8    not regarding settlement, yes.  With regards

9    to issues not related to settlement.

10             HEARING OFFICER ST. CLAIR:  Well,

11   what were the issues related to?

12             MR. DALTON:  The fact that we sent

13   a letter to the parent --

14             HEARING OFFICER ST. CLAIR:  When?

15             MR. DALTON:  On July 28th which was

16   way before the settlement.

17             HEARING OFFICER ST. CLAIR:  Just a

18   minute.  The -- okay, but that was after you

19   filed the request for the mediation hearing,

20   right?

21             MR. HULL:  Yes.

22             MR.    DALTON:    But   before   the

1   resolution and before we filed our answer.

2              HEARING  OFFICER  ST.  CLAIR:   All

3   right.  Was it an offer of settlement?

4              MR. DALTON:   No.  It was a request

5   for consent to evaluate.  Very important.

6              HEARING  OFFICER  ST.  CLAIR:   Oh,

7   I'll hear that.

8              MR.   DALTON:     And   guess   what

9   happened?  No response.  Then we repeated that

10  request for consent to evaluate on August the

11  2nd, again denied.  Two requests to consent to

12  evaluate, both of which would have the child

13  evaluated and an MDT prior to this hearing.

14             HEARING  OFFICER  ST.  CLAIR:   All

15  right.  Call your first witness and I'm going

16  to  take  your  motion  for  directive  finding

17  under advisement.  I'm going to rule on both

18  motions before I issue my determination.  Now,

19  do you want to make your opening statement or

20  call your first --

21             MR.  DALTON:   No.   I  want  to  go

22  directly to my first witness.

69

1          HEARING OFFICER ST. CLAIR:    All

2     right.  Who is your first witness?

3               MR. DALTON:  Mr. Morris.

4     Whereupon

5               RODERICK KEITH MORRIS

6     was called as a witness on behalf of the

7     Friendship Edison Charter Public Schools and

8     was examined and testified as follows:

9               DIRECT EXAMINATION

10              BY MR. DALTON:

11          Q    Please state your name and position

12     for the record.

13          A    Roderick Keith Moore, special

14     education coordinator, Friendship Public

15     Charter School-Chamberlain Campus.

16          Q    And are you familiar with the

17     student L██████ S█████?

18          A    Yes.

19          Q    And on or about July 28th did you

20     send a request for consent to evaluate to

21     parent's counsel?

22          A    Yes.

1          Q      And what was the response?

2          A      No response.

3                 MR. HULL:  Objection.  Objection to

4    that testimony.  That letter was not submitted

5    into evidence in --

6                 HEARING OFFICER ST. CLAIR:  Just a

7    minute.  Is that disclosed?  I'm going to let

8    him testify to it, but is it disclosed?

9                 MR.   DALTON:      The   notes   are

10   disclosed referring to it.

11                HEARING OFFICER ST. CLAIR:  Is the

12   letter --

13                MR. DALTON:  No.  I don't --

14                HEARING OFFICER ST. CLAIR:  It's

15   not disclosed?  All right.  Fine.  I'll let

16   him testify.

17                MR. HULL:  Objection.  I'd like to

18   make a record.  This is prejudicial to us.  It

19   was not disclosed and now they're trying to

20   back-door get in the substance of the letter

21   through testimony of a live witness.

22                HEARING OFFICER ST. CLAIR:  Please.

1    Please.  I'm going to overrule the objection.

2    I'm going to let Mr. Morris testify to his

3    recollection.    Mr.  Dalton  understands  the

4    importance  of  documents.    Go  ahead,  Mr.

5    Dalton.

6                BY MR. DALTON:

7         Q    Did you send a -- oh, you already

8    said that.  What was the response for your

9    request for consent?

10        A    There was no response.

11        Q    Do you have a copy of that letter?

12        A    Yes.

13        Q    Can  that  copy  of  that  letter  be

14   provided to the Hearing Officer upon request?

15        A    Yes.

16        Q    All right.  Now, was there another

17   request made for consent to evaluate?

18        A    There was a second request.

19        Q    And  what  was  the  result  of  that

20   request?

21            HEARING  OFFICER  ST.  CLAIR:    What's

22   the date, sir?

1              BY MR. DALTON:

2         Q    What was the date of that request?

3         A    Prior to the August 2nd resolution

4    meeting.  The exact date, I cannot give you.

5    It would be prior to August the 2nd.

6         Q    Do you have any evidence --

7              HEARING OFFICER ST. CLAIR:  Just a

8    minute.  Do you have a date on any of the

9    letters?

10             MR. MORRIS:  Yes.  July 28th for

11   the first letter.

12             HEARING OFFICER ST. CLAIR:  And you

13   don't have a date for the second?

14             MR. MORRIS:  Off the top -- no,

15   sir, not really.

16             HEARING OFFICER ST. CLAIR:  Go

17   ahead.  Excuse me, Mr. Dalton.

18             BY MR. DALTON:

19        Q    I want to refer you to Exhibit

20   Number 2 and I want you to go to page --

21             HEARING OFFICER ST. CLAIR:  Just a

22   minute.  What exhibit is that?

1           MR. DALTON:  Two.

2           MR.  HULL:  Objection.  Exhibit

3    Number 2 has been excluded.

4           MR.  DALTON:  Not with regard to

5    this issue you haven't.

6           HEARING OFFICER ST. CLAIR:  What

7    issue?

8           MR. DALTON:  The fact that a second

9    --

10          HEARING OFFICER ST. CLAIR:  All

11   right.  Just a minute.  As far as the letter

12   of intent to evaluate that was sent prior to

13   August 2nd.  Yes.  I have that.  I have that.

14          BY MR. DALTON:

15          Q    On page 3 of the note, I want you

16   to look at the portion in the middle under

17   "Parents," and ask if that refreshes your

18   memory as to the date of the second refusal to

19   consent to evaluation, and the answer would be

20   yes or no.

21          HEARING OFFICER ST. CLAIR:  All he

22   wants to do is just say that he sent the

1    letter.

2                    MR. HULL:  No, no.  Because that's

3    not what happened, sir.

4                    HEARING OFFICER ST. CLAIR:  Well, I

5    tell you what.  Why don't we let him --

6                    BY MR. DALTON:

7         Q    Does it refresh your memory?

8         A    The  second  refusal  occurred  on

9    August the 2nd.

10        Q    And under what circumstances?

11                   HEARING OFFICER ST. CLAIR:  Just a

12   minute.  Wasn't that the day of the meeting?

13                   MR. DALTON:  Yes.

14                   HEARING OFFICER ST. CLAIR:  Just a

15   minute.  Okay.  But you sent it out prior to

16   that  and  they  refused  the  consent  to

17   evaluation at the resolution meeting.

18                   MR.  MORRIS:    The  resolution

19   meeting, they did all the consulting.

20                   HEARING OFFICER ST. CLAIR:  All

21   right.  Go ahead.

22                   MR. HULL:  So that's his answer.

1          HEARING OFFICER ST. CLAIR:  Okay.

2   Next question.

3          BY MR. DALTON:

4      Q   Did the school --

5          MR. HULL:  For the record, I move

6   to strike that last answer as the witness is

7   now testifying about conversations that took

8   place at the resolution meeting.

9          HEARING OFFICER ST. CLAIR:  All

10  right.  I'll take that under advisement.

11  Continue, Mr. Dalton.

12         BY MR. DALTON:

13     Q   And what was the proposed time

14  frame for the school to complete the

15  evaluations?

16         MR. HULL:  Objection.

17         HEARING OFFICER ST. CLAIR:  Just a

18  minute.  Now I think you are going too far.

19  I'm going to sustain the objection.  I've let

20  Mr. Morris testify all he can about that

21  second letter of intent.

22         MR. DALTON:  With all due respect,

1    sir, this doesn't go to any kind of a form of

2    negotiations.    It goes to the reasonableness

3    of    protracting    litigation    which    is

4    specifically prohibited under the new law.

5               MR. HULL:    That's not an issue for

6    this    hearing.        It's    irrelevant    to    this

7    hearing.

8               HEARING    OFFICER  ST.  CLAIR:      Mr.

9    Hull, I've asked you not to volunteer -- don't

10   interrupt the conversations that are going on

11   between    the    Hearing    Officer    and    other

12   attorneys.    If you have an objection -- but I

13   want you to object to the evidence.    I decided

14   that  I'm  not  going  to  let  him  testify  to

15   anything else that took place at the August

16   2nd meeting other than that it was refused,

17   and that's the only reason why I'm letting

18   that in is because he can establish that the

19   letter was sent prior to the meeting.    Move to

20   the next point, Mr. Dalton.

21              MR. HULL:    With due respect, I want

22   to proffer for the record --

77

1          MR. DALTON:  He's done that every

2   time.

3          HEARING OFFICER ST. CLAIR:  Yes.

4   Mr. Hull, listen.  I want you to let me get

5   through this.  Go ahead, Mr. Dalton.

6          MR. HULL:  I have personally

7   appeared in the federal district court on

8   dozens of occasions and I've been told by the

9   federal court judges that if I do not proffer

10  the record I cannot make the argument on

11  appeal.  I am respectfully requesting that I

12  have the ability to proffer this record for

13  the purposes of appeal.

14          HEARING OFFICER ST. CLAIR:  Well, I

15  think you've already proffered it because --

16          MR. HULL:  No, sir, well to proffer

17  his answer, that's what I have to proffer.

18          HEARING OFFICER ST. CLAIR:  All

19  right.  Fine.  I'm going to let him put the

20  answer on the record and I'm going to take

21  your objection to it.  I may strike it.  Go

22  ahead.

1            MR. HULL:  May I make an objection

2    to  the  proffer  on  the  grounds  that  it's

3    prejudicial because it will taint you now?

4            HEARING  OFFICER  ST.  CLAIR:    No.

5    Mr. Hull!  Answer the question, Mr. Morris.

6            MR. MORRIS:  Would you restate the

7    question, please?

8            MR. DALTON:

9        Q    What  was  the  time  frame  that  the

10   school  gave  the  parent  for  completing  the

11   evaluations?

12       A    As  of  the  August  2nd  meeting  the

13   school  was  prepared  to  conduct  and  complete

14   evaluations  within  30  days  of  the  August  2nd

15   meeting.

16       Q    Well, was the remedy offered to the

17   parent --

18            HEARING OFFICER ST. CLAIR:  Just a

19   minute.  Just a minute.  I'm not going to let

20   you go any further.  Make your objection why

21   it should be struck from the record.

22            MR.  HULL:   Objection.   It's going

1    into resolution discussions in contemplation

2    of settlement.  Furthermore, I would like to

3    object to Mr. Dalton's continued arguments

4    where he's been allowed to go on at length and

5    make arguments -- make closing arguments,

6    opening arguments -- even after you've

7    overruled or decided an issue, he continues to

8    argue the issue, whereas when I've tried to

9    make a statement to counter what he said to

10   have a complete record, I have been quieted,

11   and I apologize for disrupting you, sir, but

12   it's very difficult for me to remain silent

13   when Mr. Dalton goes on at length --

14       HEARING OFFICER ST. CLAIR:  Fine.

15   You've made the record.  I'm not going to let

16   you pursue any -- do not ask any more

17   questions about what was said at the August

18   8th meeting.  Move to the next point.

19       MR. DALTON:  I can't.

20       HEARING OFFICER ST. CLAIR:  The

21   court has enough record to determine that --

22       MR. DALTON:  With all due respect,

1    the Hearing Officer's prohibiting me from
2    putting on my case.

3                HEARING OFFICER ST. CLAIR:    All
4    right.  Call your next witness.

5                MR. DALTON:  I can't.

6                HEARING OFFICER ST. CLAIR:    All
7    right.  Call your first witness, Mr. Hull.

8                MR. HULL:    Actually I'd like to
9    make a motion for directive finding.    The
10   Charter School has put on -- the issue here is
11   very clear.  Did they complete the evaluations
12   within 120 days of Exhibit 2 being provided to
13   the teacher?    They have not presented any
14   evidence to you to counter that position, that
15   allegation.

16                Therefore, even viewing the
17   evidence in the light most favorable to the
18   Charter School, which is the standard
19   reviewing in a favorable light of the non-
20   moving party, I think I would ask that you'd
21   find that we have prevailed.  We have shown
22   that the Charter School denied faith by not

1    completing  evaluations  that  were  requested

2    within  120  days  of  on  or  about  January  26,

3    2005.   That is the only issue that we brought

4    here today and --

5                    HEARING  OFFICER  ST.  CLAIR:   I'm

6    going  to  take  it  under  advisement.   I would

7    like to hear Ms. Smith.  Ms. Smith, do you --

8    are you going to call --

9                    MR.  HULL:   She  needs  to  be  sworn

10   in.

11                   HEARING OFFICER ST. CLAIR:  Yes, I

12   said -- I can't call --

13                   MR.  HULL:   I'll call Ms. Smith.

14   Whereupon

15                      EBONY SMITH

16   was called as a witness to testify on her own

17   behalf  and  on  behalf  of  the  student  and  was

18   examined and testified as follows:

19                   DIRECT EXAMINATION

20                   BY MR. HULL:

21        Q    Tell  us  your  name  for  the  record,

22   please?

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C. 20005-3701          www.nealrgross.com

1        A    Sure.  Ebony Smith.

2        Q    And  what,  if  any,  is  your

3   relationship to L██████ S████?

4        A    He is my son, my only son.

5        Q    And  what  school  did  he  attend

6   during the 2004 - 2005 school year?

7        A    Friendship  Edison  Public  Charter

8   School, the Chamberlain Campus.

9        Q    And how was he doing for the first

10  half of the school year?

11       A    Terribly.

12       Q    What do you mean by --

13            HEARING OFFICER ST. CLAIR:  Of what

14  school year?

15            MR.  HULL:  Of  the  2004  -  2005

16  school year.

17            MS. SMITH:  Terribly.

18            BY MR. HULL:

19       Q    What do you mean by that?

20       A    He was having a hard time following

21  directions,  following  rules  and  regulations

22  that  the  school  had  provided  as  well  as  his

1  teacher.  His class work was not up to par.

2  Basically he was failing and that first half

3  of the school year, those first two semesters,

4  he failed in all of his subjects.

5        Q    I'm going to show you something

6  marked as Exhibit Number 4.  Are these his

7  report cards for the 2004 - 2005 school year?

8        A    Yes.  This is his final report card

9  that pretty much gives a general idea as well

10  as comments about --

11        Q    Okay.  Now, did there come a time

12  when you asked someone at the school to

13  evaluate your son?

14        A    Yes, I did.

15        Q    When was that?

16        A    January the 26th.

17        Q    And I'm going to show you Exhibit

18  Number 2.  Do you recognize that document?

19        A    Yes.

20        Q    Okay.  Did you ever provide this

21  document to anyone at the school?

22        A    Yes, I did.

1          Q     On January the 26th.

2          Q     Who did you provide it -- well,

3    first of all let me backtrack.  Who wrote this

4    document?

5          A     In    conjunction,    my    child's

6    pediatrician  gave  me  an  already-prepared

7    request for evaluation and she told me to

8    answer where the space has been provided,

9    specifics that I needed, you know, wanted to

10   address.

11         Q     So    the    handwriting    on    this

12   document, did you write that?

13         A     Yes, I did.

14         Q     Okay.    Is    that    your    signature

15   there?

16         A     Yes, it is.

17         Q     And who did you give this to at the

18   school?

19         A     Ms. Moore.   That's his third-grade

20   teacher.

21         Q     And this was on January 26th, 2005?

22               HEARING OFFICER ST. CLAIR:   Just a

1  minute.  Is Ms. Moore here?

2                 MR. HULL:  Yes, she is.

3                 MS. SMITH:  Yes, she is.

4                 HEARING  OFFICER  ST.  CLAIR:    Okay.

5     Go ahead.

6                 BY MR. HULL:

7          Q     On January 26, 2005?

8          A     Yes.

9          Q     And what, if anything, did she say

10    after you gave her that document?

11         A     I  gave  her  this  document  in

12    addition  to  another  document  which  is  the

13    Vanderbilt Assessment for ADHD.

14         Q     Well, let me stop you and show you

15    Exhibit  Number  3  to  see  if  that's  the  same

16    thing that we have here.

17         A     This is actually the parent's side,

18    the parent's form.

19         Q     Okay.

20         A     So it's one that I had to fill out

21    as  well  as  Ms.  Moore  had  to  fill  out.    In

22    reference  to  the  request  for  evaluation,  she

1    told me that she had forwarded it to the

2    special education coordinator and they would

3    get in touch with me when they wanted to

4    perform evaluations.

5         Q    Did you give this to anyone else at

6    the school?

7         A    No, I did not.

8         Q    Why not?

9         A    Because I trusted -- that's his

10   teacher, and I figured she'd handle what

11   needed to be handled.

12        Q    Did she tell you that you needed to

13   do anything else besides wait?

14        A    No.

15        Q    Did you ever follow up with her as

16   the weeks and months passed?

17        A    Yes.  I actually followed up with

18   her right after spring break and asked her

19   because --

20             HEARING OFFICER ST. CLAIR:   When

21   you say "her" who are you referring to?

22             MS. SMITH:  I'm sorry.  Ms. Moore.

1               HEARING OFFICER ST. CLAIR: Please

2   use the name so I know --

3               MS. SMITH: Okay. I followed up

4   with Ms. Moore roughly around spring break

5   time, because time had elapsed and so I wanted

6   to see if any progress had been made, and she

7   said they would -- Ms. Moore said that they

8   would notify me. And then I asked Ms. Moore

9   at the end of the school year what would

10   happen since the evaluation still hadn't been

11   done. She said they would contact me during

12   the summer, and still nothing really happened

13   directly from the special education

14   department.

15        Q   How was it that you aware of the

16   problems he was having at school?

17        A   Just by the report cards. Just a

18   little behaviors that he does exhibit at home.

19        Q   Were you ever going to the school

20   and having conferences with anyone there?

21        A   Yes, I have.

22        Q   How often?